# EXHIBIT 1

Clerk of the Superior Court
*** Electronically Filed ***
N. Marruffo, Deputy
5/10/2022 8:51:11 PM
Filing ID 14292117

Erik W. Centner, SBN 035107
16248 N. 38th Way
Phoenix, AZ  85032
Telephone:  (602) 350-6046
*Ecentner2003@gmail.com*
*Attorney for Plaintiffs*

# IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA
# IN AND FOR THE COUNTY OF MARICOPA

_____

Gina Centner and Paul Paradis,

      Plaintiffs,

    v.

TMG Offshore, Inc. and Mario Bauer,

      Defendants.

_____

COMPLAINT **CV2022-051501**

JURY TRIAL DEMANDED

(FRAUD, PROMISSORY ESTOPPEL)

## **INTRODUCTION**

1.    This is an action brought by Gina Centner ("Centner") and Paul Paradis ("Paradis") (collectively hereinafter, "Plaintiffs"), against TMG Offshore, Inc. ("TMG Offshore") and TMG Offshore's Chief Executive Officer, Mario Bauer ("Bauer") alleging claims for:

      a.  fraudulent inducement;

      b.  promissory estoppel;

      c.  unjust enrichment; and

      d.  an accounting.

2.    Beginning in early January 2021, Bauer fraudulently induced Centner to become the Chief Compliance Officer ("Chief Compliance Officer" or "CCO") and Paradis to become the Chief Operating Officer ("Chief Operating Officer" or "COO") of TMG Offshore and to perform the work necessary to create and implement the

1

financial controls and corporate structures required by TMG Offshore's Manila-based operation to ready the company for sale.  Bauer did so by making a series of false promises to Centner and Paradis that were intentionally designed to, and did, induce Centner and Paradis to agree to take on these positions and workload.

3.     Unaware of the false nature of Bauer's representations, Centner and Paradis took on the roles and responsibilities as TMG Offshore's Chief Compliance Officer and Chief Operating Officer and performed the work required to establish and implement the financial controls and corporate structure required at TMG Offshore's Manila-based operation to ready the company for sale to any number of potential acquirers.

4.     In late December 2021, Bauer travelled to Scottsdale, Arizona and met with Paradis and Centner for two days to conduct a 2021 year-end review and 2022 year-forward planning meeting.  During this two-day meeting, among other things, Bauer reviewed all of the work that Centner and Paradis had performed on behalf of TMG Offshore, Inc. throughout 2021 and was very complimentary of the work they had both performed.  Bauer also repeatedly made clear that the work that had been performed by Centner and Paradis had greatly increased the value of TMG Offshore by creating the financial and corporate structures that potential buyers of TMG Offshore had informed Bauer they were looking for.

5.     Centner and Paradis were damaged, however, when Bauer and TMG Offshore terminated Centner and Paradis on March 24, 2022 without performing as Bauer had promised and failed to compensate Centner and Paradis or transfer the 300,000 shares of TMG Offshore common stock they had been promised, despite their having fully performed as Bauer and TMG Offshore had requested.

6.     Accordingly, Centner and Paradis have filed this action to seek the equitable and monetary relief requested herein.

**PARTIES**

7.     Plaintiff Centner is citizen of the State of Arizona and resident of Phoenix,

Maricopa County, Arizona.  Beginning in mid-January 2021, Centner became employed as the Chief Compliance Officer of defendant TMG Offshore.  During her tenure with defendant TMG Offshore, Inc. Centner performed work for TMG Offshore in Scottsdale, Arizona.

8.     Plaintiff Paradis is citizen of the State of Arizona and resident of Scottsdale, Maricopa County, Arizona.  Beginning in mid-January 2021, Paradis became employed as the Chief Operating Officer of defendant TMG Offshore, Inc.  During his employment with defendant TMG Offshore, Inc. Paradis performed work for TMG Offshore, Inc. in Scottsdale, Arizona.

9.     Defendant TMG Offshore, Inc. is a Texas corporation.  TMG Offshore was formerly known as BGPC Global, Inc. ("BGPC") and BGPC was formerly known as TMG Texas Enterprises, Inc..  At all times relevant hereto, TMG Offshore maintained its principal executive offices at 7524 E. Angus Drive, Scottsdale, Maricopa County, Arizona 85251.  During their employment with TMG Offshore, Centner and Paradis conducted their day-to-day work for TMG Offshore out of the company's principal executive offices in Scottsdale, Maricopa County, Arizona.

10.    Defendant Mario Bauer is the sole owner and Chief Executive Officer of TMG Offshore.  Bauer is a citizen of the State of Colorado and resident of Parker, Colorado.  During the relevant time period, Bauer travelled to Scottsdale, Maricopa County, Arizona on at least two occasions in December 2021 and routinely conducted business within the State of Arizona throughout 2021 and at least until March 24, 2022.

## JURISDICTION and VENUE

11.    This Court has jurisdiction over the parties and this action pursuant to A.R.S. §12-123.  In particular, this Court has jurisdiction over Defendants because:

    a.   representations and promises were made by Defendants to Plaintiffs in the State of Arizona;

    b.   Plaintiffs performed the work requested by Defendants that is central to the Causes of Action asserted here in the State of Arizona;

3

c. Defendant Bauer has engaged in systematic and continuous contacts with the State of Arizona, including but not limited to participating in daily discussions with Plaintiffs in the State of Arizona, traveling to Arizona on multiple occasions to conduct business meetings in the State of Arizona and executing a lease and personal guaranty for property located in Arizona, both of which are governed by Arizona State law and pursuant to which Defendant Bauer submitted to the jurisdiction of Arizona state courts; and

d. Defendant TMG Offshore maintains its headquarters and only brick and mortar location in the State of Arizona; and

e. Defendants caused Plaintiffs to be damaged in the State of Arizona.

12. This Court is the proper venue for this action pursuant to A.R.S. §12-401 because the actions giving rise to Plaintiff's claims occurred in Maricopa County, where Plaintiffs reside.

## **SUBSTANTIVE ALLEGATIONS**
## **The Corporate Structure and History of TMG Offshore**

13. In 1994, TMG Utility Advisory Services, Inc. ("TMG") was incorporated in the State of Texas.  At all relevant times hereto, TMG has done business under the fictitious name of "TMG Consulting, Inc." TMG is an information technology company that consults with and provides services for large utilities across the United States.  TMG owns various subsidiaries, in whole or in part, which are part of the TMG family of companies.

14. On or about June 20, 2020, TMG entered into an asset purchase agreement (the "Asset Purchase Agreement") pursuant to which TMG paid $2 million USD in exchange for the assets of two companies, Synersys Consulting, LLC and Synersys Consulting, Inc. (collectively, "Synersys"), which provide offshore, Manila-based software and coding development services.  These assets are referred to herein as the

1  "Synersys Assets."

2       15.    On or about July 9, 2020, TMG Synersys Consulting, Inc. was

3  incorporated in the State of Texas ("TMG Synersys").  At the time of its formation, TMG

4  was the majority shareholder of TMG Synersys.  Prior to September 25, 2020, TMG

5  Synersys amended its Articles of Formation and formally changed its name to TMG

6  Texas Enterprises, Inc. ("TMG Texas").  On September 25, 2020, TMG amended the

7  Asset Purchase Agreement and assigned its rights in the Synersys Assets to TMG Texas.

8       16.    Also as explained in more detail below, on January 25, 2021, TMG Texas,

9  again, formally changed its name to BGPC Global, Inc. ("BGPC").  Subsequent to this

10 name change, TMG sold all of its interest in BGPC to Defendant Bauer.  Defendant

11 Bauer is the sole owner, shareholder, and officer of BGPC.

12      17.    On January 25, 2021, 2021, BGPC changed its name to TMG Offshore,

13 Inc. (TMG Offshore, as defined above).

14      18.    Although TMG Offshore has operated under several names over the course

15 of the past two years, to avoid confusion, Plaintiffs refer to this entity herein only as

16 TMG Offshore, unless otherwise stated.

17

18 **Bauer Informs Centner and Paradis That**
   **Bauer Is In Negotiations With Tech Mahindra, Ltd.**

19 **Concerning Tech Mahindra's Possible Acquisition**
   **of TMG and TMG Offshore and That Tech Mahindra's**

20 **Due Diligence Uncovered A Multi-Year Tax Evasion Scheme At Synersys**

21      19.    In early January 2021, beginning immediately after Paradis was hired as

22 TMG's Chief Operating Officer and *before* Centner[1] had even formally begun her

23 employment as TMG's Chief Compliance Officer, Bauer conducted a series of

24 conference calls with both Centner and Paradis, during which Bauer informed Centner

25

26 _____

27      [1]    *See* Exhibit A hereto, confirming that Bauer was working with Centner and
   Paradis on matters involving TMG Texas, Inc. as early as January 4, 2021 – more than

28 two weeks *before* Centner formally began working for TMG Consulting, Inc.

5

and Paradis that Bauer was currently in negotiations with representatives from Mumbai, India based Tech Mahindra Ltd. ("Tech Mahindra") concerning Tech Mahindra's proposed purchase of both TMG and its subsidiary, TMG Offshore, which was then known as TMG Texas and which then owned all of the Synersys Assets that operated offshore in Manila, Philippines.

20.     Bauer also informed Centner and Paradis that Tech Mahindra had hired the international accounting and financial advisory firm of Grant Thornton LLP to perform accounting and finance related due diligence on the Synersys Assets and offshore coding business operated out of Manila in connection with Tech Mahnidra's proposed acquisition of TMG  and its subsidiary, TMG Offshore.

21.     Bauer then reported that, the due diligence work performed by Grant Thornton involving the Synersys Assets and offshore coding business operated out of Manila had uncovered the fact that Mr. William Chan, the prior owner of Synersys, had perpetrated a multi-year, multi-million Philippine Peso financial fraud on Filipino tax authorities by intentionally grossly understating Synersys' annual revenues and profits for a period of several years – and had even gone so far as to falsely report losses in at least two years when Synersys actually had been profitable.  According to Defendant Bauer, Chan informed Defendant Bauer that Chan had been able to successfully perpetrate this fraudulent tax scheme by bribing the Filipino tax authority assigned to review Synersys' books.

22.     In addition, during these conversations, Bauer made clear to Centner and Paradis that Bauer had come to believe that, while the core of the offshore software coding business that had been acquired by TMG Offshore when the Synersys Assets were purchased is a valuable business operation, William Chan was an extremely poor manager and, prior to TMG Offshore having acquired the Synersys Assets, William Chan had operated Synersys without ever having established any meaningful corporate control structure, internal controls, financial controls or record keeping systems.

23.     Bauer then informed Centner and Paradis that, despite having learned that

William Chan had wrongfully engineered a multi-year fraudulent tax avoidance scheme at Synersys prior to TMG Texas acquiring the Synersys Assets, Bauer had decided to allow Chan to remain in place to supervise and manage the team of approximately 35 Manila based software coding personnel on a day-to-day basis because those personnel were very loyal to Chan.  However, Bauer was clear that he wanted to strip Chan of any and all responsibility for all financial related matters and to similarly strip Chan of all signing authority because Bauer stated that Bauer did not trust Chan not to continue to commit tax fraud and, because of this, Bauer, alone, would now be the only authorized signatory allowed to execute any documents on behalf of TMG Offshore.

**Bauer Recruits Centner and Paradis To Serve as the Chief Compliance Officer And Chief Operating Officer of TMG Offshore After Tech Mahnidra Demands That TMG Offshore Be Excluded From Any Purchase Transaction Involving the Acquisition of TMG Consulting, Inc.**

24.     Following the completion of Grant Thornton's accounting and finance related due diligence on the Synersys Assets and Manila-based offshore coding business in connection with Tech Mahnidra's proposed acquisition of TMG and its subsidiary, TMG Offshore, Tech Mahnidra representatives informed Bauer that, although Tech Mahnidra was possibly still interested in acquiring TMG, Tech Mahnidra was no longer interested in acquiring any portion of, or any interest in, TMG Offshore because of the fraudulent tax avoidance scheme Grant Thornton had discovered involving Synersys.

25.     Soon after learning that Tech Mahnidra would not bid for, or purchase, any portion of TMG Offshore because due diligence had revealed the illegal tax avoidance scheme, Bauer contacted Centner and Paradis and requested that the two of them agree to assume the roles of Chief Compliance Officer and Chief Operating Officer of TMG Offshore, respectively, and that they take on the task of establishing and implementing financial controls and implementing a corporate structure at TMG Offshore, including

the company's Manila based operations to prepare the company for sale to any number of potential purchasers.

**Bauer Fraudulently Induces Centner and
Paradis By Intentionally Making A Series of
False Promises Concerning Stock Ownership and
Compensation They Would Receive From TMG Texas**

26.     The task of establishing and implementing the necessary financial controls and implementing a corporate structure at TMG Offshore, including at the company's Manila-based operations, was a monumental task. Bauer was aware of this fact because Bauer knew that the Manila-based operation had never had or utilized any formal policies or procedures.  For these reasons, Bauer knew that Centner and Paradis would have to build out the entirety of the required frameworks from the ground up.

27.     On several occasions in early and mid-2021, Bauer and Paradis discussed traveling to Manila to perform a variety of necessary work-related tasks in person. In fact, Bauer and Paradis even discussed the possibility of Paradis potentially moving to -- and living in -- Manila for a period of six months to a year, in order to better facilitate Paradis being able to perform the work necessary to create and implement the controls and structures required by TMG Texas' Manila-based operation by being onsite in Manila.

28.     At all times relevant hereto, Bauer worked closely with both Centner and Paradis, spoke with both of them multiple times per day, and knew that each of them already had very heavy day-to-day workload responsibilities as the Chief Compliance Officer and Chief Operating Officer of TMG, respectively.  Bauer also relied heavily on Centner and Paradis to work with Tech Mahindra personnel, and later, Ontario, Canada based Util-Assist, Inc. and their respective due diligence teams, all of whom were conducting due diligence on TMG throughout much of 2021.

29.     Because Bauer was aware of the heavy workload Centner and Paradis had already agreed to take on at TMG, beginning in early January 2021 and continuing thereafter, Bauer made a series of promises to Centner and Paradis that were intentionally

8

designed to, and did, fraudulently induce Centner and Paradis to perform a wide variety of additional work tasks necessary to create and implement the controls and structures required by TMG Offshore.

30.     To induce Centner and Paradis to agree to take on this additional workload, Bauer repeatedly promised Centner and Paradis that, in consideration for Centner and Paradis performing the work required to establish and implement the financial controls and corporate structure required at TMG Offshore including, in particular, at the company's Manila-based operations, Bauer and TMG Offshore would:

   a.     change the name of the TMG Offshore (then TMG Texas) to "BGPC Global, Inc.," to reflect the fact that the entity would now be jointly owned by "B"auer, "G"lanvill, "P"aradis and "C"entner .  Bauer made good on his promise to change the name of the company to BGPC Global, Inc. on January 25, 2021.[2]  *See* Ex. B hereto;

   b.     award Centner 150,000 shares out of the 1,000,000 shares of common stock in TMG Offshore that are issued and outstanding, which would provide Centner with a 15% equity ownership interest in TMG Offshore, with full common stock voting rights;

   c.     hire Centner as the Chief Compliance Officer of TMG Offshore and pay Centner an annual salary of $35,000 from February through June 2021, which would increase to an annual salary of a minimum of $50,000 beginning in the second half of 2021 and continuing thereafter, along with full insurance vacation, 401-K and other benefits from TMG Offshore in addition to the salary, bonuses and benefits Bauer and TMG had agreed to pay Centner for her work as the Chief Compliance Officer of TMG, Inc.;

---

[2]     In discussions with Centner and Paradis, Bauer stated that, following the corporate name change to BGPC Global, Inc., ownership interests would be awarded to Centner (150,000 shares), Paradis (150,000 shares), Glanvill (150,000 shares) and Bauer (550,000 shares) to mirror the 55% ownership interest that Bauer has in TMG.

d.      award Paradis 150,000 shares out of the 1,000,000 shares of common stock in TMG Offshore that are issued and outstanding, which would provide Paradis with a 15% equity ownership interest in TMG Offshore, with full common stock voting rights; and

e.      hire Paradis as the Chief Operating Officer of TMG Offshore and pay Paradis an annual salary of $35,000 from February through June 2021, which would increase to an annual salary of a minimum of $50,000 beginning in the second half of 2021 and continuing thereafter, along with full insurance vacation, 401-K and other benefits from TMG Offshore in addition to the salary, bonuses and benefits Bauer and TMG had agreed to pay Paradis for his work as the Chief Operating Officer of TMG.

31.      Bauer discussed with Centner and Paradis the fact that both of them could only be paid by TMG Offshore for work they performed for TMG Offshore and Bauer made clear that they could not be paid or compensated in any way by TMG for work they performed for TMG Offshore.

32.      Bauer explained that the reason they could only be paid by TMG Offshore for work they performed for TMG Offshore was that TMG had three minority stockholders, namely Cochise Capital, who owns 35% of TMG's outstanding common stock, Greg Galluzzi, who owns 5% of TMG's outstanding common stock, and Pam Glanvill, who owns the remaining 5% of TMG,'s outstanding common stock and none of these three minority owners of TMG, owned any interest at all in TMG Offshore. Because of this fact, Bauer explained that, were TMG. to pay Centner or Paradis for any work they performed for TMG Offshore, Bauer and TMG would be breaching the fiduciary duties that they owed to TMG's three minority stockholders by improperly using TMG assets to benefit TMG Offshore.

33.      Accordingly, Bauer repeatedly promised Centner and Paradis that they would each be paid the aforementioned salaries and benefits directly from TMG Offshore in exchange for performing all of the work that they both performed for TMG Offshore.

34.     A series of emails authored by Bauer, annexed as Exhibits C - I hereto, confirm Bauer's material representations to Centner and Paradis that TMG Offshore was going to hire them to serve as TMG Offshore's Chief Compliance Officer and Chief Operating Officer, respectively, beginning in February 2021.

35.     For example, Bauer's January 21, 2021 email states in relevant part, "*I've decided we will go forward as part-time employees to drive down costs.  At 5 resources cost goes down. . . .*"  When Paradis did not immediately respond to Bauer's request for Paradis' payroll enrollment and processing information, Bauer again emailed Paradis and stated, "*Get me this ASAP.  I have everyone's info but yours.*"  *Id.*  (Emphasis added).  *See* Ex. C.

36.     Similarly, the subject line of Bauer's January 26, 2021 email to Centner, Paradis and others BGPC employees stated, "**Insurance sign up – Please get me this information by this evening!**" and the body of Bauer's email stated in relevant part, "*[I]'m in the middle of getting our Insurance, Payroll and 401K details set up.  I need from each of you the following information: Full Name, Social Security Number, Home Address, Synersys Original Hire Date (Some of you will be 2/1 but Melvin and Kathleen will have a Synersys hire date before 2/1/21).*  PLEASE GET ME THIS BY TONIGHT. WE WILL HAVE AN ORIENTATION MEETING WITH OUR PEO PROVIDER ON FRIDAY AFTERNOON.  I'LL SEND YOU DETAILS BY TOMORROW."   *See* Ex. D.  (Italics added, bold and capitalization in original).

37.     On January 26, 2021, Centner responded to Bauer's request and provided the requested payroll enrollment information needed by Insperity to enroll Centner in the TMG Offshore payroll and benefits plan.  *See* Ex. E-F.

38.     On January 27, 2021, Paradis responded to Bauer's request and provided the requested payroll enrollment information needed by Insperity to enroll Paradis in the TMG Offshore payroll and benefits plan.  *See* Ex. G-H.

39.     On January 29, 2021, Centner and Paradis received an email from Wendy Rouse, TMG Offshore's payroll and benefits provider, Insperity, Inc.  The subject line

of Ms. Rouse's email stated, "[TMG Offshore (then BGPC Global)] – Insperity Benefits Meeting," and attached three booklets for new TMG Offshore employees, including two booklets concerning how to enroll in various TMG Offshore benefit plans. Ms. Rouse's email also invited Centner, Paradis and others to participate in an online "Employee Orientation Meeting" that was scheduled to be conducted by Ms. Rouse on Tuesday, February 2, 2021 from 7-8:30 pm. *See* Ex. I.

40. Shortly after Centner and Paradis had received the Insperity invitation to participate in the BGPC "Employee Orientation Meeting," however, Bauer informed Paradis and Centner that TMG Offshore needed to hire additional software engineers and that, although Bauer and TMG Offshore needed Centner and Paradis to continue performing all of the work they were performing for TMG Offshore, Bauer needed to delay the start of Centner's and Paradis' compensation and benefits that would be paid by TMG Offshore until mid-year 2021 so that the monies that would have been used to pay Centner and Paradis during the February through June 2021 period could be used, instead, to hire and pay additional software engineers who TMG Offshore planned to hire.

41. According to Bauer, Bauer was also going to delay compensation that Bauer and Glanvill would be paid by TMG Offshore until mid-year so as to maximize the amount of money that would be available to TMG Offshore to hire additional software engineers, which would, in turn, benefit Bauer, Glanvill, Paradis and Centner by making TMG Offshore more profitable over the long run. In addition, Bauer also stated that come mid-year, all four owners would be paid in full as though salaries and benefits had commenced in February 2021, as had originally been planned and agreed upon.

42. In reality, however, and completely unknown to Centner and Paradis was the fact that Bauer was lying and knew that his promises to award Centner and Paradis 300,000 shares (30% ownership of the company) and to compensate Centner and Paradis at the agreed upon salary and benefits, were completely false at the times Bauer made

these representations because Bauer never actually intended on fulfilling any of these promises.

43.     Unaware that Bauer was lying to Centner and Paradis, both of them agreed to – and did – continue working for TMG Offshore and agreed to allow Bauer and TMG Offshore to pay them beginning in July on the condition that they would be paid their agreed upon salaries and benefits for all of the work they performed, retroactively, back to February 2021.

**Centner and Paradis Reasonably Relied
On Bauer's False Representations and
Performed Extensive Work For TMG Offshore Only
To Have Bauer and TMG Offshore Refuse To Award
Their Shares Of BGPC Common Stock
<u>or Compensate Them, As Bauer Had Represented</u>**

44.     Unaware of the falsity of Bauer's representations, beginning in January 2021 and continuing thereafter, Centner and Paradis acted on Bauer's representations that Centner and Paradis would each receive the common stock ownership interests and voting rights in TMG Offshore and be paid the salaries and benefits that Bauer had promised each of them.

45.     In exchange for Bauer's promises, which Bauer intended would be acted on by Centner and Paradis, both Centner and Paradis performed extensive work on behalf of TMG Offshore as TMG Offshore's Chief Compliance Officer and Chief Operating Officer,[3] respectively as detailed herein.

46.     During the January through April 2021 time period, Centner and Paradis performed a wide variety of work tasks for TMG Offshore in reliance on Bauer's representations.  The work tasks Centner and Paradis performed for TMG Offshore during this period included, but were not limited to:

---

[3]     *See* Exhibits J – FF confirming that Centner and Paradis were functioning as TMG Offshore's Chief Compliance Officer and Chief Operating Officer at all times relevant hereto.

a.. identifying, hiring and working with a real estate agent in Scottsdale Arizona to locate and establish a physical office for TMG Offshore;

b. negotiating a three-year lease for TMG Offshore with the landlord and owner of the office building located at 7524 E. Angus Drive, Scottsdale, Arizona;

c. outfitting the TMG Offshore office to accommodate a planned staff of 10-12 employees who were anticipated to be working on-site at TMG Offshore's newly established principal executive offices in Scottsdale, Arizona in the post-Covid pandemic environment;

d. identifying, negotiating with and retaining New York City based international tax and accounting professionals at Grant Thornton LLP who had the knowledge, skills and experience required by TMG Offshore to ensure that the company's Manila-based operations were operating in accordance with both United States and Philippines accounting regulations and tax laws;

e. identifying, negotiating with and retaining New York and Manila, Philippines based international tax and accounting professionals at Grant Thornton LLP who had the knowledge, skills and experience required by TMG Offshore to "baseline the books, records and financial condition of [TMG Offshore]" to ensure that the company's Manila-based operations were operating in accordance with both United States and Philippines accounting regulations and tax laws  *See* Exs. J-L;

f. identifying, negotiating with and retaining the Manila, Philippines based law firm of Vasquez Bretana & Sibal-Pulido Law to provide the legal and corporate structuring advice necessary for TMG Offshore to comply with applicable United States and Philippines laws and regulations, including cross-border tax treaties;

g. establishing and staffing TMG Offshore's first-ever Manila based finance department and recruiting and hiring TMG Offshore's first-ever Manila based contract Controller, who was responsible for creating, implementing and maintaining a monthly financial reporting structure that complied with both United States and Philippines accounting regulations.  *See* Ex. M;

       i.     working with United States corporate legal counsel and coordinating with Manila based legal counsel to establish a Manila based "branch office" structure in compliance with Philippine's law, which legally minimized TMG Offshore's tax liability;

       j.     working with United States and Manila based legal counsel to create and process all of the documentation required by the appropriate embassies to create legally compliant TMG Offshore corporate entities in both the United States and Manila; and

       k.     identifying, negotiating with and retaining the CapMan Employment Agency to conduct a series of recruiting campaigns to identify and hire additional software architects and software coding engineers in the Far East on behalf of TMG Offshore. *See* Ex. N.

47.     Beginning in May 2021 and continuing through February 2022, Centner and Paradis conducted weekly and other periodic meetings with international legal, finance and tax advisors to achieve a wide variety of critical objectives for TMG Offshore. The vast majority of the work that Centner and Paradis performed for TMG Offshore was memorialized by other finance, accounting, tax and legal professionals, as reflected in the following exhibits.

48.     For example, Exhibit O hereto is the May 31, 2021 agenda for the June 2, 2021 weekly status call that was conducted with Manila based Grant Thornton personnel. In May and June 2021, Centner and Paradis were working on issues involving TMG Offshore's bookkeeping, budgeting and forecasting, tax and reporting compliance, payroll setup and processing, creation of a Philippines "branch", review of client contracts, establishment of an electronic filing and payment system for use with Philippines tax authorities. *See* Exs. O-P.

49.     In June and July 2021, Centner and Paradis continued to conduct weekly telephonic status meetings with Manila based financial professionals and legal counsel and were working on issues involving the set up of a holding company in Delaware,

review and editing of required Board Resolutions, preparation of various documents required in connection with the creation of the Manila "branch," setup of TITF bank account and work on a number of legal and corporate matters with the VBSP Law Firm. *See* Exs. Q-R.

50.    From July through September 2021, Centner and Paradis were also continuing to work on issues involving the creation of the Manila "branch," reviewing and editing of various corporate documents including the Declaration of Trust and draft Board Resolutions, and were also working on a variety of related activities that needed to be completed in order to establish and implement the financial controls and corporate structure required at TMG Offshore.  *See* Exs. S-U.

51.    In October 2021, Centner and Paradis continued to work with financial professionals from the Grant Thornton Manila office to gather the materials and information necessary to prepare the application for the Philippine SEC Compliance Monitoring Division Clearance and the Philippine "General Information Sheet," which was a time sensitive required filing due to be filed with the Filipino SEC on or before November 20, 2021.  *See* Exs. U-V.  Centner and Paradis also arranged, attended and participated in an October 21, 2021 stockholders meeting involving the interests of TMG Offshore.  *See* Ex. V.

52.    In October through November 2021, Centner and Paradis continued to work with United States and Manila based corporate counsel and financial advisors to create and gather the remaining information necessary for the preparation of the Philippine "General Information Sheet."  Centner and Paradis also worked with Manila based professionals to review and prepare the final version of TMG Offshore's GIS Sheet, opened required US bank accounts, reviewed and revised Meeting Minutes prepared by Manila based corporate counsel and reviewed and processed GT Manila's proposal for services involving GT Manila securing SEC approval of amendment of certain Articles of Incorporation.  *See* Exs. W-Y.  In addition, in November and December 2021, as TMG Offshore's Chief Compliance Officer, Centner worked with

Bauer and others to restructure the TMG Offshore benefits package to ensure that the company's Philippines' benefits package satisfied all applicable Filipino laws and regulations.

53.     In December 2021, Centner and Paradis were working with United States and Manila based corporate counsel to have required documents apostilled in order that these documents could be provided to Manila based corporate counsel for further processing in connection with the final phase of the creation and establishment of the Manila "branch."   During December, Centner and Paradis were also working with Manila based Grant Thornton professionals to establish the group life insurance with Generali Life Assurance Philippines for TMG Offshore's Manila based employees.  *See* Ex. Z.

54.     In January 2022, Centner and Paradis worked with Manila based Grant Thornton tax professionals concerning a variety of tax matters relating to 2021 year-end, including preparation of Bureau of Internal Revenue Form 2136, which Philippines law requires be distributed to all Philippines based TMG Offshore employees prior to January 31, 2022.  *See* Ex. AA.

55.     In February 2022, Centner and Paradis participated in a February 1, 2022 Board Meeting involving matters related to TMG Offshore and Bauer expressly "authorized" and "appointed" both Centner and Paradis as authorized agents of the company "***for the purpose of negotiating and entering into any and all contracts as may be necessary for the conduct of the business and operations of the Corporation, with authority to sign, execute and deliver, as well as do and perform all other acts necessary and desirable to implement this resolution***."  *See* Ex. BB.  (Emphasis added).

56.     In February 2022, Centner and Paradis also worked with Manila based Grant Thornton professionals to identify and retain AMC & Associates to audit the 2021 financial statements of SGIPH.   *See* Exs. CC-DD.  Centner and Paradis also worked with Manila based Grant Thornton professionals to negotiate a proposal involving Grant Thornton assisting and processing "the application to update books of accounts

registration and secure permit to use loose-leaf books of accounts." *See* Ex. EE.  Finally, in February 2022, Centner and Paradis continued to work with Manila based Grant Thornton financial personnel to initiate the transfer of the required $200,000.00 USD sum to be deposited in a Manila based bank account in order to comply with Philippines' regulations concerning the creation of the Manila "branch" – which was repeatedly held up only by Bauer's inexplicable failure to make the required transfer.  *See* Ex. FF.

57.     Centner and Paradis performed all of the aforementioned work, and more, on behalf of TMG Offshore in reliance on Bauer's representations that Centner and Paradis would collectively be awarded a thirty percent (30%) voting equity interest in TMG Offshore and would be paid the full amount of the agreed upon salaries and benefits without knowledge that Bauer's representations were false at the times Bauer made these representations.

**Centner and Paradis Are Damaged When Bauer**
**And TMG Offshore Fail To Perform As Bauer Had Promised**

58.     Throughout 2021, Centner and Paradis fulfilled their roles and responsibilities as the Chief Compliance Officer and Chief Operating Officer of TMG Offshore and performed all of the work detailed herein -- and more -- on behalf of, and for the benefit of, TMG Offshore as they had both agreed to do with Bauer.

59.     In late December 2021, Bauer travelled to Scottsdale, Arizona and met with Paradis and Centner for two days to conduct a 2021 year-end review and 2022 year-forward planning meeting.  During this two-day meeting, among other things, Bauer reviewed all of the work that Centner and Paradis had performed on behalf of TMG Offshore throughout 2021 and was very complimentary of the work they had both performed.  Bauer also repeatedly made clear that the work that had been performed by Centner and Paradis had greatly increased the value of TMG Offshore by creating a financial and corporate structure that potential buyers of TMG Offshore had informed Bauer they were looking for.

60.     During their two-day December meeting, Centner and Paradis inquired of Bauer when Bauer and TMG Offshore would perform as Bauer had repeatedly promised Centner and Paradis throughout 2021.  Bauer responded that he was still working through a number of financial reports and would be making final decisions in the next several days and that he was hoping to wrap everything up before year-end.

61.     On March 24, 2022, Bauer terminated Centner and Paradis as the CCO and COO of TMG Offshore and Bauer and TMG Offshore damaged Centner and Paradis when Bauer and TMG Offshore, Inc. failed to perform as Bauer had falsely represented they would because Centner and Paradis performed as they had agreed to in reliance on Bauer's false promises.

**Absent Immediate Injunctive Relief,**
**Plaintiffs Will Be Irreparably Harmed**

62.     On or about February 10, 2022, Bauer informed Centner and Paradis that Bauer was in negotiations with a Nashville, Tennessee based company known as "i3 Verticals, Inc." concerning the possible acquisition of both TMG and TMG Offshore by i3.  According to i3's SEC filings, i3 is a publicly traded company that delivers integrated payment and software solutions to customers in strategic vertical markets that include Public Sector, Healthcare and Education.

63.     Because Bauer and TMG Offshore failed to perform as Bauer had promised and Centner and Paradis did, in fact perform as they had promised, Centner and Paradis have been damaged by, among other things, Bauer and TMG Offshore's refusal to transfer ownership of 300,000 out of 1,000,000 shares of TMG Offshore. common voting shares and failure to pay the salaries and benefits Bauer had promised both Centner and Paradis.

64.     If Bauer and TMG Offshore are permitted and able to sell any part, or all of, the 1,000,000 shares of TMG Offshore common stock currently held by Bauer to i3 Verticals, or any other purchaser, before the 300,000 shares of TMG Offshore common

stock are transferred to Centner and Paradis in fulfillment of Bauer's promises, Centner and Paradis will be irreparably injured.

65.     Accordingly, Centner and Paradis seek an order enjoining Bauer and TMG Offshore from taking any action to solicit, shop or convey ownership of all, or any part of, the 1,000,000 shares of TMG Offshore common stock held by Bauer until such time as Bauer and TMG Offshore have conveyed ownership of 150,000 voting shares of TMG Offshore common stock to each of Centner and Paradis (300,000 common shares total).

**Plaintiffs Are Entitled To An Accounting Because Plaintiffs' Damages Cannot Be Readily Ascertained Due To Bauer's Fraudulent Conduct**

66.     At all times relevant hereto, Bauer routinely – and improperly – charged expenses incurred by, and for the benefit of, TMG to TMG Offshore and caused such expenses improperly to be recorded on TMG Offshore's books and records, despite the fact that such expenses had actually been incurred by, and for the benefit of, TMG. Bauer's fraudulent actions in this regard had the effect of artificially understating TMG's expenses and overstating the company's profitability, while simultaneously overstating TMG Offshore's expenses and understating TMG Offshore's profitability.

67.     Bauer fraudulently manipulated the books and records of both of these companies in this manner at all times relevant hereto in order to create the artificial appearance that TMG was more profitable than it actually was because Bauer is actively engaged in soliciting purchasers for TMG based on Bauer having contractually agreed with TMG's 35% minority owner, Cochise Capital, that Bauer would sell TMG within a contractually prescribed period of time.

68.     Bauer engaged in this financial manipulation to make TMG appear more profitable than it is in order to obtain the highest possible price for TMG because Bauer personally owns 55% of the company and stands to benefit greatly financially from his fraudulent financial manipulation of TMG's books and records.

69.     The impact of Bauer's fraudulent behavior, however, has greatly harmed

Centner and Paradis because it has rendered them unable to ascertain and quantify the amount of damages each of them incurred as a result of Bauer and TMG Offshore's misconduct, as detailed herein.  In addition, Bauer's fraudulent behavior has further harmed Centner and Paradis because it has rendered them unable to determine the true value of TMG Offshore.

70.     Because Bauer has engaged in this fraudulent financial conduct, Centner and Paradis require a forensic accounting of TMG Offshore's book and records, as well as TMG's books and records, to ascertain the true damages they have incurred as a result of the misconduct alleged herein.

## COUNT I

### (On Behalf of Plaintiffs Centner and Paradis for
### Fraudulent Inducement Against Defendants TMG Offshore, Inc. and Bauer For Damages)

71.     Plaintiffs incorporate the allegations set forth in each of the Paragraphs above as if more fully set forth herein.

72.     Beginning in early January 2021, Bauer, on behalf of TMG Offshore, fraudulently induced Centner to become the Chief Compliance Officer and Paradis to become the Chief Operating Officer of TMG Offshore and to perform the work necessary to create and implement the financial controls and corporate structures required by TMG Offshore's Manila-based operation to ready the company for sale.  Bauer did so by making a series of false promises to Centner and Paradis.

73.     In particular, Bauer represented to Centner and Paradis that TMG Offshore would pay Centner and Paradis salaries and benefits and transfer 300,000 shares of TMG Offshore common stock to Centner and Paradis, (150,000 common shares each) to induce Centner and Paradis to take on the roles as CCO and COO, respectively, and to perform the requested workload.

74.     At the time that Bauer made these representations to Centner and Paradis,

Bauer knew that such representations were false.

75.     Unaware of the false nature of Bauer's representations, Centner and Paradis relied on Bauer's representations and took on the roles and responsibilities as TMG Offshore's Chief Compliance Officer and Chief Operating Officer and performed the work required to establish and implement the financial controls and corporate structure required at TMG Offshore's Manila-based operation to ready the company for sale to any number of potential acquirers.

76.     Despite having made such representations to Centner and Paradis, and, despite the fact that Centner and Paradis performed, as requested, Bauer and TMG Offshore failed to compensate Centner and Paradis, as promised and failed to deliver the promised shares of TMG Offshore to Paradis and Centner.

77.     By failing to compensate Centner and Paradis, as promised and failed to deliver the promised shares of TMG Offshore to Paradis and Centner, Centner and Paradis have been damaged.

78.     Furthermore, Plaintiffs seek injunctive relief requiring that Defendants Bauer and TMG Offshore convey to each Plaintiff 150,000 shares of TMG Offshore stock with full voting rights.

79.     Furthermore, Plaintiffs seek an order enjoining Defendants Bauer and TMG Offshore from soliciting offers for or conveying all, or any portion of, TMG Offshore, and/or the assets owned by TMG Offshore, including but not limited to the Synersys Assets, to any third party, including but not limited to i3, William Chan, or TMG, until such time as Bauer and TMG Offshore have conveyed 150,000 common shares of TMG Offshore to each of Centner and Paradis.

///

///

///

///

## COUNT II

**(On Behalf of Plaintiffs Centner and Paradis for
Fraudulent Inducement Against Defendants TMG Offshore, Inc. and Bauer For
An Accounting)**

80.     Plaintiffs incorporate the allegations set forth in each of the Paragraphs above as if more fully set forth herein.

81.     Beginning in early January 2021, Bauer, on behalf of TMG Offshore, fraudulently induced Centner to become the Chief Compliance Officer and Paradis to become the Chief Operating Officer of TMG Offshore and to perform the work necessary to create and implement the financial controls and corporate structures required by TMG Offshore's Manila-based operation to ready the company for sale.  Bauer did so by making a series of false promises to Centner and Paradis.

82.     In particular, Bauer represented to Centner and Paradis that TMG Offshore would pay Centner and Paradis salaries and benefits and transfer 300,000 shares of TMG Offshore common stock to Centner and Paradis, (150,000 common shares each) to induce Centner and Paradis to take on the roles as CCO and COO, respectively, and to perform the requested workload.

83.     At the time that Bauer made these representations to Centner and Paradis, Bauer knew that such representations were false.

84.     Unaware of the false nature of Bauer's representations, Centner and Paradis relied on Bauer's representations and took on the roles and responsibilities as TMG Offshore's Chief Compliance Officer and Chief Operating Officer and performed the work required to establish and implement the financial controls and corporate structure required at TMG Offshore's Manila-based operation to ready the company for sale to any number of potential acquirers.

85.     Despite having made such representations to Centner and Paradis, and, despite the fact that Centner and Paradis performed, as requested, Bauer and TMG

23

Offshore failed to compensate Centner and Paradis, as promised and failed to deliver the promised shares of TMG Offshore to Paradis and Centner.

86.     By failing to compensate Centner and Paradis, as promised and failed to deliver the promised shares of TMG Offshore to Paradis and Centner, Centner and Paradis have been damaged.

87.     At all times relevant hereto, Bauer routinely – and improperly – charged expenses incurred by, and for the benefit of, TMG to TMG Offshore and caused such expenses improperly to be recorded on TMG Offshore's books and records, despite the fact that such expenses had actually been incurred by, and for the benefit of, TMG. Bauer's fraudulent actions in this regard had the effect of artificially understating TMG's expenses and overstating the company's profitability, while simultaneously overstating TMG Offshore's expenses and understating TMG Offshore's profitability.

88.     Bauer fraudulently manipulated the books and records of both of these companies in this manner at all times relevant hereto in order to create the artificial appearance that TMG was more profitable than it actually was because Bauer is actively engaged in soliciting purchasers for TMG based on Bauer having contractually agreed with TMG's 35% minority owner, Cochise Capital, that Bauer would sell TMG within a contractually prescribed period of time.

89.     Bauer engaged in this financial manipulation to make TMG appear more profitable than it is in order to obtain the highest possible price for TMG because Bauer personally owns 55% of the company and stands to benefit greatly financially from his fraudulent financial manipulation of TMG's books and records.

90.     The impact of Bauer's fraudulent behavior, however, has greatly harmed Centner and Paradis because it has rendered them unable to ascertain and quantify the amount of damages each of them incurred as a result of Bauer and TMG Offshore's misconduct, as detailed herein.  In addition, Bauer's fraudulent behavior has further harmed Centner and Paradis because it has rendered them unable to determine the true value of TMG Offshore.

91.     Because Bauer has engaged in this fraudulent financial conduct, Centner and Paradis require a forensic accounting of TMG Offshore's book and records, as well as TMG's books and records, to ascertain the true damages they have incurred as a result of the misconduct alleged herein.

## COUNT III

**(On Behalf of Plaintiffs Centner and Paradis for Promissory Estoppel Against Defendants TMG Offshore, Inc. and Bauer)**

92.     Plaintiffs incorporate the allegations set forth in each of the Paragraphs above as if more fully set forth herein.

93.     Beginning in early January 2021, Bauer, on behalf of TMG Offshore, represented to Centner and Paradis that TMG Offshore would pay Centner and Paradis salaries and benefits and transfer 300,000 shares of TMG Offshore common stock to Centner and Paradis, (150,000 common shares each) in exchange for Centner and Paradis agreeing to perform the work necessary to create and implement the financial controls and corporate structures required by TMG Offshore's Manila-based operation to ready the company for sale.

94.     Defendant Bauer's and TMG Offshore's representations concerning Plaintiffs' compensation and stock interests constituted promises.

95.     Defendants Bauer and TMG Offshore should have reasonably foreseen that Plaintiffs would rely on Bauer's promises regarding Plaintiffs' compensation and stock interests.

96.     In fact, Plaintiffs relied on Defendant Bauer's and TMG Offshore's promises to Plaintiffs' detriment.

97.     On or about March 24, 2022, Defendant Bauer and TMG Offshore terminated Plaintiffs' employment without having paid Plaintiffs the promised compensation or shares of TMG Offshore's stock.

98.     Accordingly, Plaintiffs have been damaged.

## COUNT IV

**(On Behalf of Plaintiffs Centner and Paradis for Unjust Enrichment
Against Defendants TMG Offshore, Inc. and Bauer)**

99.    Plaintiffs incorporate the allegations set forth in each of the Paragraphs above as if more fully set forth herein.

100.    Beginning in early January 2021, Bauer, on behalf of TMG Offshore, represented to Centner and Paradis that TMG Offshore would pay Centner and Paradis salaries and benefits and transfer 300,000 shares of TMG Offshore common stock to Centner and Paradis, (150,000 shares each) in exchange for Centner and Paradis agreeing to perform the work necessary to create and implement the financial controls and corporate structures required by TMG Offshore's Manila-based operation to ready the company for sale.

101.    Defendant Bauer's and TMG Offshore's representations concerning Plaintiffs' compensation and stock interests constituted promises.

102.    Defendants Bauer and TMG Offshore should have reasonably foreseen that Plaintiffs would rely on Bauer's promises regarding Plaintiffs' compensation and stock interests.

103.    In fact, Plaintiffs relied on Defendant Bauer's and TMG Offshore's promises to Plaintiffs' detriment.

104.    On or about March 24, 2022, Defendant Bauer and TMG Offshore terminated Plaintiffs' employment without having paid Plaintiffs the promised compensation or shares of TMG Offshore's stock.

105.    Accordingly, Defendants Bauer and TMG Offshore have been unjustly enriched because Plaintiffs Centner and Paradis performed the work necessary to create and implement the financial controls and corporate structures required by TMG Offshore's Manila-based operation to ready the company for sale and Defendants Bauer and TMG Offshore failed to pay Plaintiffs the promised compensation or shares of TMG Offshore's stock

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court issue an Order:

    a.  requiring Defendants to pay Plaintiffs an amount of actual damages, in an amount to be determined at trial, and where allowed by law;

    b.  a forensic accounting of TMG Offshore's book and records, as well as TMG's books and records, to ascertain the true damages they have incurred as a result of the misconduct alleged herein;

    c.  requiring that Defendants Bauer and TMG Offshore convey to each Plaintiff 150,000 shares of TMG Offshore stock with full voting rights;

    d.  enjoining Defendants Bauer and TMG Offshore from soliciting offers for or conveying all, or any portion of, TMG Offshore, and/or the assets owned by TMG Offshore, including but not limited to the Synersys Assets, to any third party, including but not limited to i3, William Chan or TMG, until such time as TMG Offshore and Bauer transfer 150,000 shares of TMG Offshore stock to each Centner and Paradis;

    e.  granting Plaintiffs' reasonable costs and attorneys' fees; and

    f.  granting such other relief as may be just and proper.

Dated:  May 10, 2022

By:   __/Erik W. Centner/_____
        Erik W. Centner, Esq.
           (#035107)
        16248 N. 38th Way
        Phoenix, AZ 85032
        (347) 268-5764
        ecentner2003@gmail.com
        *Attorney for Plaintiffs*

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiffs demand a trial by jury on all issues so triable.


Dated:  May 10, 2022

By:   __/Erik W. Centner/____
Erik W. Centner, Esq.
(#035107)
16248 N. 38th Way
Phoenix, AZ 85032
(347) 268-5764
ecentner2003@gmail.com
*Attorney for Plaintiffs*
